[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13996
Non-Argument Calendar

_____

BIA No. A96-094-750

LYUBOMIR IVANOV IVANOV,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 30, 2008)**

Before TJOFLAT, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Lyubomir Ivanov Ivanov, a citizen and native of Bulgaria, proceeding

pro se, petitions this court for review of the Board of Immigration Appeals'

("BIA") decision dismissing an appeal from the Immigration Judge's ("IJ") denial

of his application for asylum, withholding of removal under the Immigration and

Nationality Act, and relief under the United Nations Convention Against Torture

and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8

U.S.C. § 1158, 1231(b)(3), 8 C.F.R. § 208.16(c).

## I. BACKGROUND

Invanov's application for relief was premised on mistreatment allegedly

suffered as a result of being Roma, a minority ethnicity in Bulgaria. On appeal, he

argues that: (1) the BIA erred by finding that extraordinary circumstances did not

excuse his untimely asylum application; (2) he was entitled to withholding of

removal under the Immigration and Nationality Act ("INA") because he suffered

past persecution, thus triggering a presumption that his life or freedom would be

threatened upon his return to Bulgaria; and (3) he was entitled to relief under CAT

because he suffered past persecution.

## II. DISCUSSION

When the BIA issues a decision, we review only that decision, "except to the

extent that [the BIA] expressly adopts the IJ's decision." Al Najjar v. Ashcroft,

257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's

reasoning, we will review the IJ's decision as well." Id. Here, the BIA issued its

2

own decision without any adoption. Therefore, we review only the BIA's decision. In addition, the IJ specifically found Ivanov to be credible and the BIA did not address this finding. Therefore, we take his testimony as true. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1255 n.2 (11th Cir. 2007).

To the extent that the BIA's decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). Factual determinations, however, are reviewed under the "highly deferential substantial evidence test," which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (quotation omitted). "[W]e cannot engage in fact-finding on appeal, nor may we weigh evidence that was not previously considered below." Id. at 1278.

A. Timeliness of Asylum Application

We review questions of subject-matter jurisdiction de novo. Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007). An application for asylum must be filed within one year after the date of the alien's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Although an untimely application may be considered

3

where the Attorney General is satisfied that there are changed or extraordinary circumstances, "[n]o court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)(B)]." 8 U.S.C. § 1158(a)(2)(D), (a)(3). We have held that 8 U.S.C. § 1158(a)(3) "eliminates appellate jurisdiction to review the Attorney General's determination whether an alien filed within one year or established extraordinary circumstances to excuse an untimely filing." Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1231 (11th Cir. 2007).

We conclude that we lack jurisdiction to review the BIA's determination that Ivanov failed to timely file his application or demonstrate extraordinary circumstances excusing this untimely filing. Sanchez Jimenez, 492 F.3d at 1231. Accordingly, we DISMISS the petition as to this claim.

B.  Withholding of Removal

An alien seeking withholding of removal under the INA must establish that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). If the alien establishes past persecution on account of a protected ground, there is a presumption that his life or freedom would be threatened upon return to his country. 8 C.F.R. § 208.16(b)(1)(i). To establish past persecution, the alien must prove that 1) he was persecuted, and 2) the persecution was on account of a protected ground. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir.

4

2006). Although the term is not defined by the INA, we have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (quotations omitted). "In determining whether an alien has suffered past persecution, the IJ must consider the cumulative effects of the incidents." Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861 (11th Cir. 2007) (per curiam). With respect to nexus, the petitioner must show that he was persecuted because of a protected ground. INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S. Ct. 812, 816 (1992).

In this case, substantial evidence supports the BIA's finding that Ivanov did not suffer past persecution because the incidents he described either did not rise to the level of persecution or were not on account of ethnicity. No presumption of future persecution applies, and Ivanov has not asserted that he can show future persecution, and thus, has abandoned the issue. Sepulveda, 401 F.3d at 1228 n.2. Accordingly, the BIA did not err by denying his claim for withholding of removal.

C. Relief under CAT

"As a signatory to [CAT], the United States has agreed not to expel, return or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Jean-Pierre v.

5

U.S. Att'y Gen., 500 F.3d 1315, 1322-23 (11th Cir. 2007) (quotation and alteration omitted). To obtain relief under CAT, the applicant has the burden of proving that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

> Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 208.18(a)(2).

> In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:
>
> (i) Evidence of past torture inflicted upon the applicant;
>
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3). We have previously accepted the BIA's interpretation of the regulatory definition of torture as one that includes "certain isolated, vicious and deliberate acts, such as burning with cigarettes, choking, hooding, kalot marassa, and electric shock," but does not include "other forms of police brutality . . . [such as] beatings with fists, sticks, and belts . . . ." Cadet v. Bulger, 377 F.3d 1173, 1194-95 (11th Cir. 2004).

In this case, substantial evidence supports the BIA's finding that Ivanov has not established that it is more likely than not that he would suffer torture upon his return to Bulgaria. Accordingly, the BIA did not err by denying his CAT claim.

### III. CONCLUSION

Ivanov petitions for reviews of the BIA's decision affirming the IJ's denial of his application for asylum, withholding of removal under the INA, and relief under CAT. Because we lack jurisdiction to review the BIA's finding that Ivanov failed to show extraordinary circumstances excusing the untimely filing of his asylum application, we dismiss the petition as to this issue. Substantial evidence supports the BIA's denial of his claim for withholding of removal because the record indicates that Ivanov failed to establish past persecution based on a protected ground and Ivanov abandoned any argument that he has otherwise

7

established that his life or freedom would be threatened upon return to Bulgaria.

Finally, substantial evidence supports the BIA's denial of Ivanov's CAT claim

because he failed to establish that it would be more likely than not that he would be

tortured upon his return to Bulgaria.

**PETITION DISMISSED IN PART, DENIED IN PART.**